[Cite as *State v. Strickling*, 2014-Ohio-5713.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No.    14AP0001 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TODD STRICKLING | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE Nos.    CRB-13-08-01344 TRD-13-08-08670 |

DECISION AND JOURNAL ENTRY

Dated: December 29, 2014

WHITMORE, Judge.

{¶1}    Appellant, Todd Strickling, appeals from the judgment of the Wayne County Municipal Court. This Court affirms.

I

{¶2}    In August 2013, at approximately 8 p.m., Strickling was driving his car on a rural two lane road in Wayne County, Ohio. Traveling in the car with Strickling were his two children, ages fifteen and eleven. For reasons unknown, Strickling swerved off the right side of the road and into a ditch. The car then traveled back across the road and came to rest in a ditch on the left side of the road. At some point during this time, the car struck a metal mailbox, which crashed through the windshield and landed in the back seat of the car. The mailbox weighed an estimated 30 to 40 pounds.

{¶3}    Jack Adkins lived in a house nearby and witnessed the accident. Adkins called the police and went to check on Strickling and the children. Before the police arrived, Strickling

was able to pull his car out of the ditch with the help of a passing truck and drove away. Deputy Kirk Shelly arrived on scene after Strickling had left. Deputy Shelly subsequently located Strickling, his children, and the car at a house approximately four miles from the accident site.

{¶4} Strickling was charged with: (1) two counts of child endangering, in violation of R.C. 2919.22(A); (2) reckless operation, in violation of R.C. 4511.20; (3) failure to wear a seatbelt, in violation of R.C. 4513.263(B)(1); and (4) leaving the scene of an accident, in violation of R.C. 4549.03. After a bench trial, Strickling was acquitted of failing to wear a seatbelt and leaving the scene of an accident. The court found Strickling guilty of reckless operation and both counts of child endangering. Strickling now appeals and raises one assignment of error for our review.

## II

### Assignment of Error

THE COURTS'S (sic) FINDING OF GUILT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5} In his sole assignment of error, Strickling argues that his convictions for child endangering are not supported by sufficient evidence and are against the manifest weight of the evidence.[1] We disagree.

**Sufficiency**

{¶6} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997),

---

[1] Strickling limits his argument to his child endangering convictions. We, therefore, limit our review accordingly.

quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, the evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶7} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

{¶8} R.C. 2919.22(A) provides, in relevant part, that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Strickling, in essence, argues that the State failed to establish that he violated a duty of care to his children or created a substantial risk to their safety when he drove from the scene of the accident to a friend's house nearby.

{¶9} Adkins testified that he was sitting in his driveway, facing the roadway, when he saw the accident. According to Adkins, he observed a car, traveling northbound, swerve off the right side of the road into a ditch, hit a neighbor's mailbox, swerve back across the road, and "nose-dive[]" into the ditch on the other side of the road. Adkins called the police to report the accident and a couple of people, including Adkins, approached the vehicle to check on the occupants. Adkins told Strickling, the driver, that the police were on their way, but, according to Adkins, Strickling was "in an awful big hurry to get the car out of the ditch and get out of there." Adkins assumed Strickling had been drinking based on his hurry to leave the scene, his lack of

concern for his kids, and because he was stuttering. Adkins also believed he smelled alcohol on Strickling. Adkins testified that, while Strickling was trying to stop passing cars for help getting the car out of the ditch, Adkins walked back to his house to call the police again. On his way back to the car, Adkins said Strickling "took off flying down the road." Adkins estimated that it was five to ten minutes from the time of the accident to the time Strickling drove away.

{¶10} Adkins, a mechanic, testified that he did not believe the car was safe to drive and would not have allowed his grandchildren to ride in a car in that condition. According to Adkins, the windshield was "blown out" and there was "a lot of damage to the front of the car." William Cunningham, Adkins's son-in-law, took a photograph of the car after it was pulled out of the ditch. This photograph was admitted into evidence and shows extensive damage to the windshield, including a very large, gaping hole in the middle.

{¶11} Deputy Shelly testified that when he arrived at the scene of the accident the car was already gone. Using the license plate information, Deputy Shelly identified Strickling as the owner of the car and spoke with him by phone. According to Deputy Shelly, Strickling sounded "as if he was under the influence of alcohol or some type of drug." He described Strickling's speech as "very slurred and slow." Sometime thereafter, Deputy Shelly met Strickling and the children at Strickling's friend's house, located 3.7 miles from the scene of the accident. Deputy Shelly testified that Strickling admitted to leaving the scene of the accident because he did not want to wait for the police and did not realize he had to stay at the scene. Deputy Shelly conducted a horizontal gaze nystagmus test and "observed two clues." Additionally, Deputy Shelly administered a portable breath test which did not detect any alcohol in Strickling's system. Deputy Shelly placed Strickling under arrest for child endangering, reckless operation, and leaving the scene of an accident and sat Strickling in the back of his police cruiser while he

spoke with the children. When he returned approximately ten minutes later, Strickling was asleep.

{¶12} The children both testified that after the accident they were covered in glass, did not want to get back in the car, and were scared. Strickling's daughter testified that after the accident Strickling had them put a blanket over their heads to protect them from flying glass. Neither of the children remembered seeing the metal mailbox in the backseat, despite it being in the backseat with them.

{¶13} Viewing the evidence in the light most favorable to the State, we cannot agree that there is insufficient evidence to support Strickling's child endangering convictions. Strickling does not dispute that after the accident he drove the car 3.7 miles to a friend's house with the children in the backseat. The car's windshield had a gaping hole in the center and the portion that remained was shattered and partially caved in. Neither Strickling nor the children would have been protected from objects, such as rocks, that may be encountered while traveling on a roadway. Because there is sufficient evidence to support Strickling's convictions for child endangering, his assignment of error, as it relates to sufficiency of the evidence, is overruled.

**Manifest Weight**

{¶14} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Id.*, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶15} Strickling argues that his convictions for child endangering are against the manifest weight of the evidence because the evidence showed that "the area of the accident was unsafe" and Strickling was "ensur[ing] the safety of his children" by transporting them to a safe location.

{¶16} Cunningham testified that Strickling told him he was going to drive the car to a friend's house located "just [ ] down the street." Cunningham believed the car was unsafe to drive, but that it was a judgment call on whether it was "safer for them to be on the street with a disabled vehicle" or "to get the vehicle off the street to a safe location." Cunningham stated that if he knew Strickling was going to travel 3.7 miles he would not have let Strickling go. In Cunningham's opinion, Strickling should have pulled the car into a nearby driveway and waited for a tow truck.

{¶17} The photograph shows that there is no berm to the roadway where the accident occurred. However, even assuming it was prudent to move the car from the roadway after the accident, it does not follow that it was safe to drive the car 3.7 miles to a friend's house. Strickling could have pulled the car off the roadway into a nearby driveway and waited for a tow truck. As discussed above, because of the very large hole in the windshield, neither Strickling

nor the children were protected from objects flying up from the roadway. If something had struck Strickling, he could have lost control of the car and caused serious injuries to himself and the children. The children testified that they were scared, covered in glass, and did not want to get back into the car after the accident. Additionally, Strickling's son's knee was bleeding. Having reviewed the evidence, we cannot conclude that Strickling's convictions for child endangering are against the manifest weight of the evidence. Strickling's assignment of error, as it relates to the manifest weight of the evidence, is overruled.

III

{¶18} Strickling's assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

JENNIFER A. ROBERTS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.